# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| PHG INC., d/b/a Pinnacle Roofing Consultants and P&L APARTMENTS, LLC,<br><br>      Plaintiffs,<br><br>vs.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY,<br><br>      Defendant. | No. 24-CV-1028-CJW-MAR<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

## I.    INTRODUCTION

Defendant's motion for summary judgment is before the Court. (Doc. 20). The two plaintiffs, PHG Inc. and P&L Apartments, LLC, filed a joint resistance to defendant's motion. (Doc. 25). Defendant filed a reply. (Doc. 28).

For the following reasons, the Court **grants** defendant's motion as to both of PHG's claims, **denies** defendant's motion as to P&L's breach of contract claim, and **grants** defendant's motion as to P&L's bad faith claim.

## II.    FACTUAL BACKGROUND[1]

Defendant issued a commercial insurance policy to P&L covering several of P&L's apartment buildings in Dubuque, Iowa. The policy was effective from July 29, 2022 to July 28, 2023.

P&L had an ongoing business relationship at the time with roofing contractor PHG ("PHG Roofing"), the other plaintiff here. PHG Roofing monitored storms in relation

---

[1] The facts are generally undisputed and are taken from the parties' statements of facts and responses to the statements of facts. (*See* Docs. 20-2, 25-1, 25-2, & 29).

to properties owned by Greg Ladehoff, who apparently owned P&L. Presumably, PHG Roofing was monitoring these properties so that it could receive P&L's business in case there was damage to any of the roofs.

On April 1, 2023, P&L entered into an assignment of benefits of the insurance policy where P&L assigned the benefits to PHG Roofing. The assignment document states that P&L "hereby sells and transfers to [PHG Roofing] any and all claims, demands and causes or future causes of action of any kind whatsoever which [P&L] has or may have against Nationwide Insurance Company [under the policy.]" (Doc. 20-3, at 27). The parties also note that other Ladehoff-affiliated entities which owned property also entered into assignment of benefits agreements with PHG Roofing, and claims were made under those properties' policies to defendant as well—although the Court does not find this relevant to its analysis.

On July 11, 2024, P&L submitted a sworn proof of loss under the policy. P&L, in the loss statement, claimed a loss date of July 28, 2023. Although the details are not in the parties' statements of undisputed facts, both parties operate as though the claimed loss had to do with an alleged hail and wind storm on July 28, 2023, which plaintiffs apparently claim caused damage to P&L's apartment buildings. The loss statement included a line for "Other Named Insureds on Policy having an interest in the damaged covered property." (*Id.*, at 36). P&L filled in the blank, listing a credit union and "Semper Fi Public Adjusters LLC." There was also a line stating "At the time of the loss, [P&L] had full ownership interest in the claimed property except:" which P&L also answered by listing the same credit union and Semper Fi. Semper Fi holds no ownership interest in the apartments and is not a named insured under the policy. Finally, the loss statement included a line asking whether there were any "changes of interest, use, occupancy, possession, new liens, change of liens or exposure of the property described," which P&L answered by stating that there were none. P&L claimed the value of the loss

2

was $16,403,076.10 and included an estimate of the loss conducted by Semper Fi, which is a public adjuster. (*Id.*).

Defendant paid P&L approximately $350,000 for the loss under the policy. This appears to have occurred on December 6, 2023—i.e., before P&L submitted the sworn proof of loss.

The assignment of benefits document was first produced to defendant around September 4, 2024.

The policy includes several provisions relevant to the motion before the Court. First, there is a so-called anti-assignment clause, which provides, in relevant part: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (Doc. 20-3, at 23). "Your" refers to the insured, P&L, and "our" refers to the insurer, defendant. The policy also includes a provision stating that "[n]o one may bring a legal action against [defendant] under this Coverage Part unless [t]here has been full compliance with all of the terms of this Coverage Part[.]" (*Id.*, at 24). The policy also includes a provision stating:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1.  This Coverage Part;
> 2.  The Covered Property;
> 3.  Your interest in the Covered Property; or
> 4.  A claim under this Coverage Part.

(*Id.*). Lastly, the policy places a duty on the insured to cooperate with defendant in the investigation or settlement of the claim. (*Id.*, at 25).

On July 31, 2024, plaintiffs filed a petition against defendant in Iowa state court, (Doc. 2), which defendant removed to this Court. Plaintiffs bring claims of breach of contract and insurance bad faith.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make a dispute of fact genuine. In sum, a genuine dispute of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The plaintiff may not then simply point to allegations made in its complaint, but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine dispute of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88. *See also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

### IV.   ANALYSIS

Defendant moves for summary judgment on both of plaintiffs' claims. (Doc. 20). Defendant asserts several different arguments in support of its motion, and the Court will discuss them in order.

#### A.   *Plaintiffs' Breach of Contract Claim—PHG Roofing*

Defendant first argues it is entitled to summary judgment on PHG Roofing's breach of contract claim. (Doc. 20-1, at 3–5). Defendant's argument is based upon the anti-assignment clause in the policy, which states that P&L's "rights and duties under

5

this policy may not be transferred without [defendant's] written consent except in the case of death of an individual named insured." (Doc. 20-3, at 23).

Indeed, defendant's argument is sound. Under Iowa law, "insurers may impose conditions in the terms of the policy on an insured's ability to assign its rights under the insurance policy." *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 236 (Iowa 2001). Generally, "stipulations prohibiting assignments absent an insurer's consent have been held to apply only to pre-loss assignments." *Id.* at 237. This appears to be the rule in the vast majority of jurisdictions. *See, e.g.*, 3 Jordan R. Plitt et al., *Couch on Insurance* § 35:8 (3d ed. June 2025 Update) (noting that "the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss" but do not prevent post-loss assignments); *Egger v. Gulf Ins. Co.*, 903 A.2d 1219, 1224 (Pa. 2006) ("Text writers and judicial decisions very generally recognize that stipulations in policies forbidding an assignment, except with the insurer's consent, apply only to assignments before loss or death of the insured or the maturity of the policy."). Iowa law, in compliance with the majority rule, then, is clear: a condition in an insurance policy requiring the insurer's consent before any assignment occurs is a valid, enforceable condition if the attempted assignment occurs before the relevant loss.

Here, all of these conditions are present. An anti-assignment condition appears in the policy. Further, P&L and PHG Roofing executed the assignment document on April 1, 2023, months before the relevant loss on July 28, 2023. Under the policy, such an assignment requires defendant's written consent. Plaintiffs did not receive written consent from defendant. Thus, the assignment fails, and PHG Roofing may not bring any claim against defendant.

Plaintiffs contend, however, that defendant waived its invalid assignment argument based upon defendant's "continued handling of the Claim following the assignment[.]" (Doc. 25, at 3–5). Plaintiffs cite *Neiman v. Hawkeye Securities Fire Insurance Co.*, 217

6

N.W. 258 (Iowa 1927), which states that "if, with knowledge of the facts constituting a forfeiture of the policy, the insurer continues to treat the contract as a binding contract and induces the insured to act in that belief, the forfeiture is waived." *Id.* at 260. Indeed, "[w]aiver is 'the voluntary or intentional relinquishment of a known right.'" *Hawkeye Drive, LLC v. Selective Ins. Co. of the Se.*, 703 F. Supp. 3d 951, 961 (N.D. Iowa 2023) (quoting *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982)).

Plaintiffs argue defendant waived the right to challenge the assignment. Plaintiffs note that defendant investigated the claim after the assignment in April 2023, and even made a payment to P&L in December 2023. Plaintiffs also discuss P&L owner Ladehoff's involvement in other cases with defendant where a Ladehoff-controlled entity had assigned claims to PHG Roofing. (Doc. 25, at 4). In the other cases, plaintiffs state, defendant continued adjusting the claims and resolved the claims through either payment or litigation. (*Id.*). According to plaintiffs, defendant's conduct in this case and knowledge of the assignment structure in other cases leads to the conclusion that defendant waived any argument challenging the assignment here.

Plaintiffs' argument is unavailing. As defendant points out, plaintiffs offer no evidence that defendant knew of the assignment in this case before litigation. (Doc. 28, at 4). Plaintiffs have not presented any evidence that defendant knew about the assignment before defendant made the payment to P&L in December 2023. The fact that defendant knew of assignments in other cases has nothing to do with an assignment in this case, especially if, as defendant says, the assignments in the other cases occurred after the insured suffered the losses. As this Court has said in a similar context, "[d]efendant cannot make a knowing waiver without knowing the most important facts." *Hawkeye Drive*, 703 F. Supp. 3d at 960. The important fact that defendant needed to know here to waive an argument was the existence and timing of the assignment. Plaintiffs have presented no evidence that defendant knew of the existence or timing of

7

the assignment before this litigation had begun. Thus, defendant did not waive any argument challenging the assignment.

Because the pre-loss assignment did not comply with the anti-assignment clause in the policy, and because defendant did not waive its argument on this front, defendant's motion for summary judgment on PHG Roofing's breach of contract claim is **granted**.

### B. *Plaintiffs' Breach of Contract Claim—P&L*

Defendant also moves for summary judgment on P&L's breach of contract claim. Defendant points to the "legal action against us" clause in the policy as the basis of its motion. That clause provides that "no one may bring a legal action against [defendant] under this Coverage Part unless [t]here has been full compliance with all of the terms of this Coverage Part[.]" (Doc. 20-3, at 24). Defendant argues that by "entering into a prohibited pre-loss assignment, P&L failed to comply with the Policy's terms and cannot maintain this action against" defendant. (Doc. 20-1, at 5–6). That is, by entering into the pre-loss assignment, defendant argues, P&L is no longer "in full compliance" with the policy as is required to bring a lawsuit against defendant under the policy.

Plaintiffs take a different path. They argue that the assignment was either void or voidable. (Doc. 25, at 5–6). That is, plaintiffs argue that the proper remedy for a pre-loss assignment of insurance benefits is invalidation of the assignment, and not a forfeiture of the original insured's right to make a claim. In short, plaintiffs focus on the legal remedy, or consequence, of a pre-loss assignment.

This case presents a highly unique situation. The parties have not cited to a case directly on point, and the Court has not found any on its own. Almost all of the cases relating to this issue involve an alleged assignee, like PHG Roofing here, attempting to bring a claim under a policy against an insurer. The issues in these cases often revolve around the right of a pre-loss assignee to bring a claim, the timing of the loss compared to the assignment, and whether the insurer had consented to the assignment or waived its right to challenge the assignment. *See Conrad Bros.*, 640 N.W.2d at 237–38 (timing);

8

*Neiman*, 217 N.W. at 261 (consent/waiver); *Egger*, 903 A.2d at 1225–29 (timing). All of the cited cases deal with the alleged assignee's rights in relation to the insurer.

But there do not appear to be any cases on point involving the original insured's rights in this situation. Sometimes, the language of the policy determines the outcome. For example, defendant cites a secondary source which states that a "policy provision that prohibits assignments and **makes the policy void** if an assignment is attempted without the consent of the insurer is valid and enforceable in the courts as it is not unreasonable." (Doc. 28, at 3 n.4) (quoting Plitt et al., *supra*, § 35:6) (emphasis added by defendant). But the case cited for this proposition in the secondary source analyzes a policy with a clause which provided that the policy "shall be void if . . . this policy be assigned before a loss." *Morgan v. Am. Cent. Ins. Co.*, 92 S.E. 84, 85 (W. Va. 1917). In *Morgan*, then, the assignment would have voided the policy because of the language in the policy. Here, the policy language does not precisely define the consequence of an invalid assignment. The policy states: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (Doc. 20-3, at 23). Thus, the policy does not expressly determine the rights of the original insured, P&L, in the event of an invalid assignment.

Because so many of the authorities relied upon by the parties do not have the original insured's rights at issue, much (if not all) of the relevant language could be considered dicta. For example, in *Conrad Brothers*, the Iowa Supreme Court stated that it had "previously invalidated the assignment of an insurance policy and its underlying claims prior to the occurrence of the condition triggering liability under the policy." 640 N.W.2d at 236. But in all the cases cited in support of this statement, in addition to the *Conrad Brothers* case itself, the issue involved the rights of the alleged assignee, and not the assignor. This means the language is dictum, although dictum can still serve as persuasive authority. Nevertheless, the language in the *Conrad Brothers* opinion stating that the court had previously "invalidated" the assignment of the policy and underlying

claims suggests that an attempted assignment is void or voidable—i.e., the assignment was invalid. If the assignment was invalid, then, logically, the original insured/assignor never made a valid assignment. If the original insured never made a valid assignment, then they could not have breached the policy condition prohibiting assignment. And if the original insured here, P&L, did not breach the condition prohibiting assignment, then defendant's argument fails, as P&L would have been in compliance with the policy. This is the logical end to P&L's argument on this issue.

Defendant cites to an earlier Iowa Supreme Court case where, as defendant says, the court "described '[t]he invalidity of the policy' that had been assigned pre-loss." (Doc. 28, at 3) (quoting *Davis v. Bremer Cnty. Farmers' Mut. Fire Ins. Ass'n*, 134 N.W. 860, 863 (Iowa 1912)). But the *Davis* court explained that, in that case, the invalidity "was not the result of any forfeiture on account of condition subsequent" but instead the "contract of insurance came to an end because the subject-matter of the contract—that is, the insurable interest of [the original insured/assignor]—had ceased to exist." *Id.* Put another way, the policy had become invalid because the original insured had sold the property which the policy covered. Thus, the original insured in *Davis* had no right to recover under the policy, nor any right to assign the policy (even setting aside the anti-assignment clause), because an "insurable interest" is necessary for a policy to be valid, and the original insured had no insurable interest anymore. *See* Plitt et al., *supra*, § 41:1. The language to which defendant points in *Davis*, then, is irrelevant to the issue at hand.

Defendant also points to the purpose of anti-assignment clauses in insurance contracts to support its argument. "The primary reason for the prohibition of assignments prior to loss absent an insurer's consent is to protect the insurer against increased risks of loss resulting from an assignment of coverage to a new insured." *Conrad Bros.*, 640 N.W.2d at 237. Defendant asserts that this reasoning is illustrated well here, where an apartment owner assigned its rights under a policy covering its roof to a roofing company who may be incentivized to sell roofs. (Doc. 28, at 2). Because anti-assignment

10

provisions are for the benefit of the insurer, then, "only the insurer may complain that the assignment is in violation of the prohibitory clause, and if the insurer refuses to do so, the insured cannot attack their own assignment on these grounds." Plitt et al., *supra*, § 35:5 (internal footnote omitted). Defendant appears to argue that, here, only defendant, as the insurer, can use the anti-assignment clause to its benefit—although defendant does not fully develop this argument. (Doc. 28, at 2 n.3).

To the extent defendant is making this argument, defendant takes it too far. Defendant simply says "an insured 'cannot attack their own assignment.'" (*Id.*) (quoting Plitt et al., *supra*, § 35:5). But the rule is not so black and white. An insured cannot attack their own assignment only "if the insurer refuses to do so[.]" Plitt et al., *supra*, § 35:5. This makes sense. In essence, the underlying reasoning here is that the insurer is in a position to be injured by the assignment, so only the insurer can choose to enforce or waive the anti-assignment clause. If the insurer chooses to recognize the assignment (and in turn waive the anti-assignment clause), then the original insured/assignor has no right to challenge the assignment. Here, however, defendant, the insurer, is apparently choosing to enforce the anti-assignment clause and challenge the assignment, as shown by its argument that the assignment is not allowed and PHG Roofing has no claim under the policy against defendant. It would certainly be unfair to allow defendant to use the anti-assignment clause to its benefit as it concerns PHG Roofing's claim against defendant, but not to allow P&L to rely on the same clause to its benefit. Defendant chose to challenge the assignment. This is not a case of an insurer recognizing an assignment and an insured/assignor later claiming that the assignment was in breach of the insurance contract. Once defendant invoked the anti-assignment clause in the policy to its benefit, the other parties—specifically P&L—can make arguments based upon that reality. As the saying goes, defendant is trying to have its cake and eat it too.

Defendant also points to the consequences if the Court agrees with P&L on this issue. Defendant argues that, if the Court accepts plaintiffs' position here, there is

11

nothing stopping P&L from executing a new post-loss assignment in favor of PHG Roofing, which, according to defendant, would be a "run end-around the anti-assignment clause and Iowa law." (Doc. 28, at 3). Indeed, it would appear that this may be true procedurally. But, as noted above, post-loss assignments are generally allowed under Iowa law no matter what the anti-assignment clause says. So this hypothetical situation would simply result in a valid post-loss assignment, no different than any other. Any post-loss assignment, under Iowa law, could be classified as a "run end-around the anti-assignment clause," but they are still allowed. It is unclear how this helps defendant's argument.

Defendant also argues that, if the assignment is not treated as a material breach and/or lack of substantial compliance, defendant will be "subjected to risks it never consented to, *e.g.*, a first-party roof damage claimant that *sells roofs*." (*Id.*). But this is not so. The Court granted defendant's motion for summary judgment regarding PHG Roofing's breach of contract claim above. Under the Court's ruling, defendant is potentially subject only to the risks to which it originally consented: a claim by P&L under the policy upon which defendant and P&L agreed. Indeed, "[i]f the insurer's consent is essential to the validity of an assignment, it necessarily follows that there is no effective assignment where no consent is given by the insurer, and the assignee acquires no right as against the insurer." Plitt et al., *supra*, § 36:72 (footnote omitted). If the assignee here—PHG Roofing—acquired no right as against the insurer—defendant—then defendant cannot be subjected to risks to which it never consented, because PHG Roofing has no right to make a claim.

In sum, the Court agrees with plaintiffs' argument here. P&L were in substantial compliance with the policy because the anti-assignment clause worked to invalidate

12

P&L's attempted assignment to PHG Roofing.  P&L is not precluded from bringing its breach of contract claims due to the invalid pre-loss assignment.[2]

Alternatively, defendant argues, P&L misrepresented material claim information, and therefore P&L may not recover under the policy.  (Doc. 20-1, at 6–7).  In this respect, the policy provides:

> This Coverage Part is void in any case of fraud by [P&L] as it relates to this Coverage Part at any time.  It is also void if [P&L] or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1.   This Coverage Part;
> 2.   The Covered Property;
> 3.   [P&L's] interest in the Covered Property; or
> 4.   A claim under this Coverage Part.

(Doc. 20-3, at 24).

Defendant points to the July 1, 2024 sworn proof of loss document P&L submitted to defendant as the basis for its argument.  The proof of loss did not list PHG Roofing in the "Other Named Insureds on Policy having an interest in the damaged covered property:" field or in the "Title and Interest: At the time of the loss, P&L Apartments LLC had full ownership interest in the claimed property except:" field.  P&L also answered "none" in the "Changes: Since the said policy was issued, there has been no changes of interest, use, occupancy, possession, new liens, change of liens or exposure of the property described, except:" field.  P&L had signed the assignment document on

---

[2] The parties do not entirely develop Iowa breach of contract law in this area or the standards for recovery, and only refer generally to the elements in making their arguments.  The law here is succinctly explained in *Hamre v. State Farm Fire & Casualty Co.*, No. 4:20-cv-4-JAJ, 2021 WL 1351444, at *3 (S.D. Iowa Mar. 1, 2021).  Suffice it to say that P&L could avoid summary judgment by showing (1) substantial compliance with the condition precedent, (2) waiver or excuse of the condition, or (3) a lack of prejudice to the insurer based upon a failure to comply with the condition.  *See id.* (quoting *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991)).  Although the parties appear to generally couch their arguments in the first option, substantial compliance, the Court notes that much of the analysis above could also be viewed through the lens of the third option, lack of prejudice to the insurer.

April 1, 2023, prior to submitting the proof of loss. Plaintiffs produced the assignment document to defendant on September 4, 2024. Defendant argues that "[b]y concealing the pre-loss assignment of benefits from [defendant] until September of 2024, P&L violated the anti-concealment, anti-misrepresentation, and cooperation provisions of the Policy." (Doc. 20-1, at 6).

P&L argues defendant has not established that P&L intentionally misrepresented anything, and that the assignment is not a material element which effects coverage under the policy. (Doc. 25, at 6–9).

P&L has the better argument here. Although a jury perhaps could conclude that P&L made an intentional misrepresentation, a jury could certainly also conclude that there was no misrepresentation. A jury could also conclude that any misrepresentation was not intentional. The first line on the sworn proof of loss asks about other named insureds on the policy. P&L was the only named insured on the policy, so there appears to be no clear misrepresentation on the first line in failing to include PHG Roofing in the answer. The second line asks about any other "ownership interest" in the claimed property. It does not appear anybody other than P&L had an ownership interest in the subject property, so, again, there appears to be no clear misrepresentation in failing to include PHG Roofing in the answer.

Defendant also argues it should be granted summary judgment because P&L intentionally concealed a material fact. The arguments here are essentially the same as the arguments regarding an intentional misrepresentation. Defendant's motion on this front will be denied as well. First, it is unclear, at this stage, whether P&L intentionally concealed the attempted assignment. A reasonable jury could conclude either way on that issue. Second, it is also unclear at this stage whether the attempted assignment was material. Given the Court's holding regarding the legal consequences of the failed assignment, the attempted assignment may not be material. That is not to say, however, that it was not material at the relevant time period, from when P&L and PHG Roofing

14

executed the assignment document until defendant found out about it. The parties—specifically, defendant—dedicate very little of their arguments to this issue, so the Court will not comment any further on the materiality given that the parties, defendant specifically, have not presented fully developed arguments. (*See* Docs. 20-1, at 6–7; 28, at 4–5). The Court's holding on this issue rests upon the analysis of the intentional concealment element.

In sum, defendant's motion for summary judgment as to P&L's breach of contract claim is **denied**.

### C. *Plaintiffs' Bad Faith Claim*

Defendant moves for summary judgment on plaintiffs' bad faith claim. (Doc. 20-1, at 7). "Under Iowa law, a party alleging insurer bad faith 'must show (1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis.'" *Pheasant Trail Seventh Owners Ass'n v. Owners Ins. Co.*, No. 22-CV-111-CJW-MAR, 2023 WL 8376207, at *7 (N.D. Iowa Oct. 24, 2023) (quoting *Thornton v. Am. Ins. Co.*, 897 N.W.2d 445, 461–62 (Iowa 2017)). Defendant's first argument for summary judgment is essentially that the bad faith claim is derivative of the underlying contract claim, and thus it fails for the same reasons defendant argues the contract claim fails. Defendant argues alternatively that "summary judgment should still enter on the common law bad faith claim because Plaintiffs can offer no evidence to support this claim as to either element (1) or (2)." (Doc. 20-1, at 7). Plaintiffs argue that because their contract claims survive, the derivative bad faith claim survives. (Doc. 25, at 10). Alternatively, plaintiffs request more time for discovery on this issue. Defendant, in reply, argues that plaintiffs' bad faith claim fails because there is no live contract claim, and because plaintiffs offer no evidence of bad faith. (Doc. 28, at 5).

15

Given that the parties agree that the bad faith claim is a derivative of the contract claims, defendant's motion as to PHG Roofing's bad faith claim must be **granted** because the Court granted summary judgment as to PHG Roofing's contract claim.

The Court denied summary judgment as to P&L's contract claim, however, and therefore rejects defendant's argument as to P&L's bad faith claim on this front.

Defendant's argument that P&L cannot offer any evidence supporting its bad faith claim is a different story. P&L did not even attempt to make an argument on the merits. P&L's entire argument on this issue is as follows:

> Written discovery has already begun, and discovery in this case closes on October 24, 2025. It is reasonably likely that further discovery will produce the evidence required to support Plaintiffs' claim for insurance bad faith under [*Dolan v. Aid Insurance Co.*, 431 N.W.2d 790 (Iowa 1988)]. Fed. R. Ev. [sic] 11(b)(3). Therefore, the time is not ripe for this Court to make any final determination on this claim.

(Doc. 25, at 10). The Court assumes P&L intended to cite Federal Rule of Civil Procedure 11(b)(3), as there is no Federal Rule of Evidence 11. But Federal Rule of Civil Procedure 11 deals with attorneys' and parties' representations to the Courts and issues surrounding such duties. Rule 11(b)(3) provides that by "presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). This section simply requires attorneys to assert factual contentions which have evidentiary support or will likely have evidentiary support after further investigation or discovery. Rule 11 does not serve as a basis for deferring a ruling on a motion for summary judgment.

16

But Rule 56(d) sometimes serves as a basis for deferring a ruling on a motion for summary judgment. To defer the ruling, however, the nonmovant, P&L here, must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). P&L has failed to specify the reasons why it cannot present facts essential to justify its opposition to defendant's motion regarding bad faith. P&L has also not submitted affidavits or declarations on the issue, as required by the rule. P&L has also not complied with Local Rule 56(g), which requires parties requesting relief under Federal Rule of Civil Procedure 56(d) to file a separate motion within 14 days after the motion for summary judgment and support it by affidavits or declarations.

In sum, P&L has not responded to defendant's challenge on the merits of the bad faith claim, and has not complied with the procedures required to request additional time for discovery on the issue. Perhaps just as importantly, P&L has not specified what exactly it expects to discover through further discovery. The Court would give P&L's request to defer determination of this issue more consideration if P&L had specified what relevant evidence it believes it may discover through additional discovery. But, where the request is simply that it is "reasonably likely that further discovery will produce the evidence required to support" a party's claim, this Court is not inclined to grant the party's request. That would, in a way, simply endorse a fishing expedition, which this Court will not do. P&L's request for additional time for discovery on the merits of the bad faith claim is therefore denied for both procedural and substantive reasons.

Turning back to the merits, P&L failed to respond to defendant's motion at the time to do so. Summary judgment "is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Bartram v. Graver*, No. 22-CV-123-CJW-KEM, 2024 WL 4406946, at *6 (N.D. Iowa Feb. 29, 2024) (quoting *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007)). P&L did not make any

17

argument on the merits of the issue after defendant challenged whether P&L could offer any evidence in support of the claim. P&L, therefore, has not created a genuine dispute of material fact for trial on its bad faith claim.

Thus, defendant's motion for summary judgment on P&L's bad faith claim is **granted**.

## V. CONCLUSION

For the reasons stated above, the Court **grants** defendant's motion for summary judgment as to PHG Inc.'s breach of contract and bad faith claims. (Doc. 20). PHG Inc. therefore has no remaining claims and is **dismissed**.

The Court **denies** defendant's motion for summary judgment as to P&L Apartments LLC's breach of contract claim, but **grants** defendant's motion for summary judgment as to P&L Apartments LLC's bad faith claim. (Doc. 20).

**IT IS SO ORDERED** this 15th day of August, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa