**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| P&L APARTMENTS, LLC, | No. 24-CV-1028-CJW-MAR |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION** |
| | **AND ORDER** |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION ……………………………………………………… 2

II.  FACTUAL BACKGROUND …………………………………………… 2

III.  SUMMARY JUDGMENT STANDARD ………………………………… 7

IV.  ANALYSIS…………………………………………………………… 9

  A.  Defendant's Motion to Strike …………………………………… 9

  B.  Defendant's Motion for Summary Judgment …………………………13

V.  CONCLUSION……………………………………………………….…27

## I.     INTRODUCTION

Defendant's second motion for summary judgment and motion to strike are before the Court.  (Docs. 32 & 41).  Plaintiff filed a resistance to defendant's motion for summary judgment.  (Doc. 33).  Defendant filed a reply.  (Doc. 38).  The Court then scheduled oral argument and invited plaintiff to file a sur-reply to respond to some of the arguments defendant made in its reply brief.  (Doc. 39).  Plaintiff filed a sur-reply, along with a new statement of facts and supporting appendix.  (Docs. 40, 40-1, & 40-2).  Defendant then filed a motion to strike plaintiff's new statement of facts and appendix.  (Docs. 41 & 42).  Plaintiff filed a resistance to the motion to strike.  (Doc. 44).  On March 25, 2026, the Court heard oral argument on both pending motions.  (Doc. 48).

For the following reasons, the Court **denies** defendant's motion for summary judgment (Doc. 32), and the Court **denies** defendant's motion to strike (Doc. 41).

## II.     FACTUAL BACKGROUND

Defendant's motion for summary judgment pending before the Court is defendant's second motion for summary judgment.  The facts relevant to this motion include both those which were relevant for the purposes of defendant's first motion for summary judgment as well as several new facts.  The Court therefore begins with the facts from its order on defendant's first motion for summary judgment:

> Defendant issued a commercial insurance policy to P&L covering several of P&L's apartment buildings in Dubuque, Iowa.  The policy was effective from July 29, 2022 to July 28, 2023.
>
> P&L had an ongoing business relationship at the time with roofing contractor PHG ("PHG Roofing"), the other plaintiff here.[1]  PHG Roofing monitored storms in relation to properties owned by Greg Ladehoff, who apparently owned P&L.  Presumably, PHG Roofing was monitoring these

---

[1] In its order on defendant's first motion for summary judgment, the Court granted defendant's motion as to PHG Roofing, so PHG Roofing is no longer a plaintiff in this case.

properties so that it could receive P&L's business in case there was damage to any of the roofs.

On April 1, 2023, P&L entered into an assignment of benefits of the insurance policy where P&L assigned the benefits to PHG Roofing. The assignment document states that P&L "hereby sells and transfers to [PHG Roofing] any and all claims, demands and causes or future causes of action of any kind whatsoever which [P&L] has or may have against Nationwide Insurance Company [under the policy.]" (Doc. 20-3, at 27). The parties also note that other Ladehoff-affiliated entities which owned property also entered into assignment of benefits agreements with PHG Roofing, and claims were made under those properties' policies to defendant as well— although the Court does not find this relevant to its analysis.

On July 11, 2024, P&L submitted a sworn proof of loss under the policy. P&L, in the loss statement, claimed a loss date of July 28, 2023. Although the details are not in the parties' statements of undisputed facts, both parties operate as though the claimed loss had to do with an alleged hail and wind storm on July 28, 2023, which plaintiffs apparently claim caused damage to P&L's apartment buildings.[2] The loss statement included a line for "Other Named Insureds on Policy having an interest in the damaged covered property." (*Id.*, at 36). P&L filled in the blank, listing a credit union and "Semper Fi Public Adjusters LLC." There was also a line stating "At the time of the loss, [P&L] had full ownership interest in the claimed property except:" which P&L also answered by listing the same credit union and Semper Fi. Semper Fi holds no ownership interest in the apartments and is not a named insured under the policy. Finally, the loss statement included a line asking whether there were any "changes of interest, use, occupancy, possession, new liens, change of liens or exposure of the property described," which P&L answered by stating that there were none. P&L claimed the value of the loss was $16,403,076.10 and included an estimate of the loss conducted by Semper Fi, which is a public adjuster. (*Id.*).

---

[2] Defendant's statement of undisputed facts and P&L's response related to this second motion for summary judgment make clear that the claimed loss at issue indeed arose from an alleged wind and hailstorm. (Docs. 32-2, at 6; 33-1, at 3).

3

Defendant paid P&L approximately $350,000 for the loss under the policy. This appears to have occurred on December 6, 2023—i.e., before P&L submitted the sworn proof of loss.

The assignment of benefits document was first produced to defendant around September 4, 2024.

The policy includes several provisions relevant to the motion before the Court. First, there is a so-called anti-assignment clause, which provides, in relevant part: "Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured." (Doc. 20-3, at 23). "Your" refers to the insured, P&L, and "our" refers to the insurer, defendant. The policy also includes a provision stating that "[n]o one may bring a legal action against [defendant] under this Coverage Part unless [t]here has been full compliance with all of the terms of this Coverage Part[.]" (*Id.*, at 24). The policy also includes a provision stating:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

(*Id.*). Lastly, the policy places a duty on the insured to cooperate with defendant in the investigation or settlement of the claim. (*Id.*, at 25).

On July 31, 2024, plaintiffs filed a petition against defendant in Iowa state court, (Doc. 2), which defendant removed to this Court. Plaintiffs bring claims of breach of contract and insurance bad faith.

(Doc. 30, at 1–3).

In its order on defendant's first motion for summary judgment, filed August 15, 2025, the Court held that, under Iowa law, the April 1, 2023, pre-loss assignment of benefits from P&L to PHG Roofing was invalid and ineffective. Thus, the Court held

PHG Roofing did not acquire any rights from P&L, and therefore PHG Roofing could not bring a claim against defendant. (*Id.*, at 6, 8). For the same reason, the Court denied defendant's challenge to P&L's breach of contract claim. (*Id.*, at 15). The Court held that because P&L's attempted pre-loss assignment to PHG Roofing was invalid, P&L did not relinquish its own right to bring a claim under the insurance contract. (*Id.*, at 12–13). The Court also granted summary judgment for defendant on both plaintiffs' bad faith claims. (*Id.*, at 15–18). The only remaining claim, then, is P&L's breach of contract claim against defendant.

Since the Court entered its order on defendant's first summary judgment motion, new facts have both come to light and transpired. On September 9, 2025, a few weeks after the Court filed its order on defendant's first motion for summary judgment, defendant received a document through a subpoena which shows P&L assigned its benefits under the policy to PHG Roofing on October 26, 2023. (Doc. 32-2, at 4–5). Defendant was not aware the document existed before it received it in September 2025. (*Id.*, at 6). Importantly, P&L executed this assignment after the alleged loss, which occurred on July 28, 2023. The assignment document states, in relevant part:

> FOR ACTUAL VALUE RECEIVED, the Assignor [P&L] hereby sells and transfers to the Assignee [PHG Roofing] and its successors, assigns and personal representatives, any and all claims, demands and causes or future causes of action of any kind whatsoever which the undersigned has or may have against Nationwide Insurance Company, its affiliates, underwriters, or 3rd party claims adjusters including but not limited to Nationwide Insurance Company for following type and form of claim:
>
> Weather Related Event and Damage to property, located 3700-3716 Pennsylvania Avenue, Dubuque, IA 52002.

(Doc. 32-3, at 40). The second paragraph continues and clarifies that the assignment is for the claim at issue in this lawsuit by specifying the policy number, claim number, and

loss date.  (*See id.*).  A representative from P&L and a representative from PHG Roofing signed the document.  (*Id.*).

On November 25, 2025, defendant filed the motion for summary judgment at issue here, which relies on the facts relating to the post-loss assignment.  (Doc. 32).

On December 8, 2025, an attorney representing P&L sent PHG Roofing a letter "to provide formal notice that the Assignment of Claims and Benefits, executed October 26, 2023, between P & L Properties, LLC and PHG, Inc. . . . is hereby terminated, effective immediately."  (Doc. 33-3, at 2).  The letter explained that "[t]his action is taken due to [PHG Roofing]'s failure to complete the contracted roofing work within an appropriate and reasonable timeframe, as required under Iowa law and industry standards."  (*Id.*).

That same day, December 8, 2025, PHG Roofing sent P&L a document, allegedly signed by a PHG Roofing representative, which stated, in full: "[PHG Roofing] agrees and acknowledges the termination of the Assignment of Benefits for Penn Place 'P&L Apartments LLC' 3700 Pennsylvania Ave Dubuque, IA 52002."  (*Id.*, at 6).

Defendant takes issue with P&L's statements of fact regarding both December 8, 2025 documents.  (Doc. 38-1).  Defendant states that the documents are not relevant or material to the motion's legal issues, disputes the authenticity of both documents, and argues both documents are inadmissible hearsay.  (*See id.*).  The Court will discuss the relevance and materiality in the analysis section below.

Regarding authenticity, defendant objects that these documents contradict P&L's corporate designee's testimony, given in November 2024 and October 2025, in which he testified that, as he understood it, P&L had assigned the insurance claim to PHG Roofing and PHG Roofing had the right to bring the insurance claim.  (*Id.*, at 1–2, 5).  Defendant also noted that P&L did not authenticate the documents by affidavit or other manner as generally required by the local rules.  (Doc. 38, at 5).

After defendant made new arguments in response to P&L's new evidence, the Court filed an order scheduling oral argument and inviting P&L to file a sur-reply responding to defendant's legal arguments. (Doc. 39). P&L not only filed a sur-reply responding to defendant's arguments, but also filed an additional statement of facts and appendix. (Docs. 40, 40-1 & 40-2). P&L included in the new appendix affidavits which authenticate the December 8, 2025 documents—i.e., the cancelation letter and return acknowledgment of the cancelation. (Doc. 40-2).

Defendant then filed a motion to strike P&L's new statement of material facts and appendix. (Docs. 41 & 42). Defendant objects to P&L's procedure in filing the new documents and reasserts some objections regarding the new evidence even if it is considered. (Doc. 42). P&L filed a resistance to defendant's motion to strike. (Doc. 44).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of material fact is genuine if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). It is also genuine "when a reasonable jury could return a verdict for the nonmoving party on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citing *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make a dispute of fact genuine. In sum, a genuine dispute of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp.*, 477 U.S. at 323). The plaintiff may not then simply point to allegations made in its complaint, but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In determining whether a genuine dispute of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88. *See also Reed v. City of St.*

8

*Charles*, 561 F.3d 788, 790 (8th Cir. 2009).  A court does "not weigh the evidence or attempt to determine the credibility of the witnesses."  *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004).  Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]"  *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

## IV.    ANALYSIS

Defendant moves for summary judgment on P&L's remaining claim for breach of contract.  (Doc. 32).  Defendant also moves to strike P&L's additional statement of material facts and additional appendix attached to P&L's sur-reply.  (Doc. 41).  The Court will address the motion to strike, then the motion for summary judgment.

### A.    *Defendant's Motion to Strike*

This case, and each stage of briefing for the motion for summary judgment and related motion to strike at issue, are in a unique procedural posture.  In responding to defendant's motion for summary judgment, P&L made new arguments about new evidence.  Defendant, in reply, challenged P&L's evidence on several bases, including raising hearsay and authentication issues.  At that point, the Court wanted to hear from P&L on the same issues because defendant had (not unreasonably) raised new arguments in its reply brief.  The Court therefore filed an order scheduling oral argument and, after pointing out that defendant had raised new issues in its reply brief, and noting that the Court "would like to have a written argument from P&L," invited P&L to respond to defendant's new arguments in a sur-reply brief.  (Doc. 39).

P&L not only filed a sur-reply brief, but also filed a new statement of facts and appendix.  (Docs. 40, 40-1, & 40-2).  The sur-reply appendix addressed the potential authentication deficiencies P&L had in its original appendix.

Defendant now moves to strike P&L's sur-reply appendix and statement of facts.  (Doc. 42).  Defendant argues the filings were not authorized by any applicable rule or

order, that one of the witnesses who executed a new affidavit was not properly disclosed, and that the new affidavits are "sham" affidavits. (*Id.*). P&L resists each of defendant's arguments. (Doc. 44).

The first issue is whether P&L's sur-reply statement of facts and appendix were authorized by rule or order. Neither the Federal Rules of Civil Procedure nor the Local Rules discuss a sur-reply. *See* Fed. R. Civ. P. 56; LR 56. And the Court requested a "written argument" from P&L in a sur-reply brief. (Doc. 39). The Court is unaware of a rule which specifically allows a new appendix to be filled with a sur-reply brief—of course, this is partly because no rule addresses sur-reply briefs themselves. On the other hand, there is also no specific rule disallowing new evidence to be presented with a sur-reply brief.

Ideally, P&L would have filed authenticating materials along with its evidence in its resistance appendix. It did not do so. Once defendant challenged P&L on this issue (and the Court invited P&L to file a sur-reply brief), however, P&L responded by filing affidavits to authenticate the new documents.

At base, the goal of summary judgment is to determine whether a party has any evidence supporting its claim or defense, and the strong preference is to decide cases on their merits when possible. *See, e.g.*, *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 964 (8th Cir. 2015) ("We recognize the preference for claims to be tested on the merits[.]"). So, even though P&L's authenticating affidavits perhaps came a few weeks (or months) later than ideal, the Court will not strike them. The Court granting defendant's motion to strike here would perhaps result in the dismissal of this case on the procedural ground that P&L did not file authenticating affidavits, when there were authenticating affidavits in the summary judgment record by the time the Court ruled. The Court is especially willing to grant P&L some leniency on this issue because defendant (fairly) raised authenticity as an issue in its reply brief, and P&L addressed the

10

issue in its next filing. Given the strange path of the briefing, the preference for deciding matters on the merits when possible, and the fact that, as P&L points out, there is not necessarily a rule or order specifically disallowing new evidence attached to a sur-reply, the Court is hesitant, and ultimately unwilling, to strike P&L's sur-reply appendix.

As a final rationale, even though neither party raised it, the Court notes Federal Rule of Civil Procedure 56(e)'s guidance. Rule 56(e)(1) specifically states that if "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact." The Rule also gives the Court other options if a party fails to properly support a fact, such as considering the fact undisputed for the purposes of the motion. Fed. R. Civ. P. 56(e)(2). But, as stated in subsection (1), the Court may give the party an opportunity to properly support or address the fact. The Court's decision here to decline striking P&L's sur-reply appendix should be considered the Court giving P&L the opportunity to properly support its statement of material facts under Rule 56(e)(1).

Defendant next argues David Pillers, the author of one of the new affidavits, is not a disclosed witness under Rule 26(a)(1) and therefore the Court should not consider his affidavit, presumably under Rule 37(c)(1). (Doc. 42, at 4–5). P&L argues that Pillers' only involvement in this case is to notify PHG Roofing that P&L intended to cancel the assignment and to help authenticate the sur-reply appendix documents at summary judgment, and that he will not be a witness at trial. Thus, P&L argues there is no prejudice to defendant, and P&L was substantially justified in not disclosing Pillers as a witness. (Doc. 44, at 4–7).

A court may consider at summary judgment only admissible evidence. *See Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008). A judge decides what evidence is admissible, and in making that decision, a judge "is not bound by evidence rules, except

those on privilege." Fed. R. Evid. 104. In making such a preliminary determination as to admissibility, the judge is to do so outside the presence of a jury. Fed. R. Evid. 104(c). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Here, the question for the Court to decide is whether P&L has proffered sufficient evidence that the termination documents are what P&L purports them to be. In deciding that issue, the Court is not bound by the Federal Rules of Evidence. That preliminary question of admissibility is not one for a jury to make, so whether an affiant is disclosed as a trial witness or could properly testify at trial is irrelevant. P&L has provided the Court with a letter and an affidavit averring that the termination of assignment documents are what they purport to be. (Doc. 40-2, at 7–9). Even if the authors of those documents would be barred from testifying at trial because they were not disclosed under Rule 26, that does not mean that the Court cannot consider the evidence before trial in making a preliminary determination as to the admissibility of other evidence at trial. Regardless, it is within a court's discretion whether to sanction a party for violating discovery rules by barring the evidence. Here, under the unique procedural posture in this case, the Court does not bar Pillars from presenting evidence outside the presence of the jury to authenticate the termination documents so the Court may make a preliminary determination as to their admissibility.

Finally, defendant argues the Court should strike P&L's statement of additional material facts and affidavits because they are sham affidavits. (Doc. 42, at 5–7). The Court will address this argument in its analysis of the summary judgment motion below. The Court ultimately sides with P&L on this issue, though, and denies defendant's motion to strike on the basis that the new affidavits are "sham" affidavits.

Thus, the Court **denies** defendant's motion to strike. (Doc. 41).

12

### B.   *Defendant's Motion for Summary Judgment*

Defendant moves for summary judgment on P&L's remaining breach of contract claim.  (Doc. 32).  In its opening brief, defendant argues P&L no longer has any cause of action against defendant in light of its post-loss assignment to PHG Roofing.  (Doc. 32-1, at 4–5).

As noted above, the factual landscape then changed.  P&L presented evidence showing it wrote a letter to PHG Roofing terminating the assignment, and that PHG Roofing responded by acknowledging the assignment's termination.  (Doc. 33-3, at 2–3, 6).  P&L argues this maneuver means that the right to bring the breach of contract claim now returns to P&L, so defendant's motion fails.  (Doc. 33, at 2–6).[3]

Defendant, in reply, makes new arguments resisting P&L's new evidence and argument.  (Doc. 38).  Defendant argues the evidence in P&L's resistance appendix is all inadmissible because it is hearsay and because it is not properly authenticated.  (*Id.*, at 3–6).  Defendant next argues that the doctrine of judicial estoppel bars P&L from changing positions when P&L had argued previously that it assigned the claim to PHG Roofing.  (*Id.*, at 6–7).  Defendant further argues P&L's theory change without amending its complaint is improper and P&L's claim fails for that reason.  (*Id.*, at 7–9).  Defendant then argues P&L should be barred from using the two letters—the cancellation and the

---

[3] The Court specifically notes one passage of P&L's argument: "Defendant does not state, as it did in its previous motion for summary judgment, that [P&L] forfeited any rights under the Policy for violating the anti-assignment provision and by failing to establish substantial compliance with the Policy, thereby waiving any arguments related to the Policy going forward." (Doc. 33, at 3).  P&L does not cite any authority in support of this claim.  Failure to raise an issue at summary judgment does not preclude making the argument at trial, and if made at trial, later on appeal.  The Court specifically rejects the idea that defendant will be precluded from making an argument for the rest of this litigation because it did not raise the argument on its second motion for summary judgment.  Of course, this Court already rejected defendant's argument on the issue, but that does not preclude defendant from raising the argument at trial, either in an (unlikely) attempt to persuade the Court to switch its view, or, more realistically, to preserve the issue for appeal if defendant so desires.

acknowledgment—because P&L did not produce the documents during discovery. (*Id.*, at 9–10). Finally, defendant argues P&L may not make this last-minute cancellation of the assignment under Iowa law. (*Id.*, at 10–12).

In its sur-reply, P&L resists defendant's arguments on all fronts. P&L addresses the merits of each of defendant's arguments, except authenticity, which P&L instead argues the affidavits in its supplemental appendix attached to the sur-reply serve to remedy. (Doc. 40).

The first issue is whether the evidence P&L relies upon—the termination of assignment letter P&L sent to PHG Roofing and PHG Roofing's acknowledgement in response—is admissible. If defendant shows that the evidence is not admissible, the Court has several options, including considering the fact which the evidence is supporting undisputed for the purposes of the motion. Fed. R. Civ. P. 56(c)(2), 56(e). As noted above, the Court denied defendant's motion to strike the sur-reply appendix, so the Court will take the new affidavits into account. The new affidavits cure any authentication problems with the documents. P&L's member, Gregory Ladehoff, filed an affidavit stating that he caused his lawyer, Pillers, to send the termination of assignment letter and that the attached letter is a true copy of the letter. (Doc. 40-2, at 2). Pillers' affidavit is in accord with Ladehoff's. (*Id.*, at 5–6). And Michael Cooper, one of P&L's attorneys in this litigation, filed an unchallenged affidavit stating that he received a signed statement from Miguel Alvarez, a representative of PHG Roofing, which acknowledged and agreed to the termination of the assignment. (*Id.*, at 9). Both of the documents upon which P&L relies, then, have the authentication required for the low bar of admissibility. In short, the Court finds as a preliminary matter that the documents are what P&L purports them to be.

The documents are also not inadmissible hearsay, contrary to defendant's argument. The rule against hearsay generally excludes an out of court statement offered

14

to prove the truth of the matter asserted. Fed. R. Evid. 801(c); *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992). But the "Federal Rules of Evidence 'exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.'" *Mueller*, 972 F.2d at 937 (quoting advisory committee note to Fed. R. Evid. 801(c)). "A contract, for example, is a form of verbal act to which the law attached duties and liabilities and therefore is not hearsay." *Id*. Some courts explain the same principle by stating that the hearsay rule does not apply to "out-of-court statements that have 'independent legal significance,'" which includes situations "where legal consequences flow from the fact that the words were said[.]" *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 141–42 (D.D.C. 2014). P&L makes precisely this argument, that the documents "constitute statements that are 'not offered to prove the facts asserted,' but were offered as legally-operative conduct that determined the rights and duties of the parties." (Doc. 40, at 2) (citation omitted). The Court agrees. In the context in which P&L would offer the letters—for their legal significance which shows legal duties and liabilities—the documents are not hearsay. Thus, the Court rejects defendant's hearsay argument.

The next issue is whether, under Iowa law, P&L and PHG Roofing can cancel the assignment. Defendant argues P&L provided no authority for its position that the cancellation is permissible under Iowa law. (Doc. 38, at 10–12). Part of defendant's argument is that the cancellation is not proper as a tactical move at this stage of the litigation—the Court will address that part of this argument below. Defendant was largely correct when it argued in its reply brief that P&L had not cited relevant Iowa law. But, in its sur-reply, P&L indeed provided some Iowa law on the issue (albeit in a case from over 100 years ago), which provided "[i]t is undoubtedly the law that the parties to a contract can mutually agree to a rescission of the same." (Doc. 40, at 5) (citing

15

*Mortensen v. Frederickson Bros.*, 180 N.W. 977, 982 (Iowa 1921)). This is still the general rule. *See, e.g.*, *Cedar City Enters., Inc. v. Graf Props., L.L.C.*, No. 08–0705, 2009 WL 1066512, at \*3 (Iowa Ct. App. Apr. 22, 2009); 17A Am. Jur. 2d *Contracts* § 524 (Feb. 2026 Update) ("A contract can be rescinded by voluntary, mutual agreement of the parties.") (footnote omitted). P&L has put forward evidence—the cancellation letter and PHG Roofing's acknowledgment—which could show P&L and PHG Roofing rescinded the assignment contract by voluntary, mutual agreement. Thus, the Court rejects defendant's argument that P&L and PHG Roofing could not cancel the assignment.

The analysis of the rest of defendant's arguments are all related. Defendant's remaining arguments involve judicial estoppel, P&L changing theories without amending the complaint, and barring P&L from using the assignment termination documents under discovery rules. Defendant's implicit logic under each of these arguments is that if the Court accepts the argument, then P&L's cancellation is not effective, that P&L therefore assigned the claim to PHG Roofing, and P&L thus has no right to bring a claim against defendant, meaning the Court should grant summary judgment and dismiss this case.

Two rules of civil procedure guide, or at least provide context for, the rest of the analysis, and the way in which they work together ultimately undermines the underlying premise of defendant's arguments. The Court notes that neither party raised these rules explicitly, but made arguments which touch on aspects of the rules.

Federal Rule of Civil Procedure 17 requires that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Subsection (a)(3) of Rule 17 provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

The other relevant rule is Federal Rule of Civil Procedure 25, which governs the substitution of parties. The relevant portion, Rule 25(c), provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)."

The Eighth Circuit has made clear the distinction between the two rules: "Because Rule 17 applies only to transfers occurring prior to the commencement of a lawsuit, we will construe ELCA's motion as solely relying on Rule 25(c)." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 n.4 (8th Cir. 1995); *see also* 7C *Wright & Miller's Federal Practice & Procedure* § 1958 (3d ed. Apr. 2026 update) (hereinafter "*Wright & Miller*") ("Rule 25(c) speaks to the situation in which 'an interest is transferred' during the pendency of an action. If an interest has been transferred prior to commencement of the suit, Rule 17, requiring that an action be brought in the name of the real party in interest and defining capacity to sue and be sued, is controlling. After suit is brought, Rule 25(c) becomes the relevant provision.").

Rule 17, then, requires the action to be prosecuted in the name of the real party in interest at the commencement of the suit. Rule 25 governs a situation in which an interest is transferred during the pendency of the lawsuit. And, importantly, under both rules, the immediate remedy of a party not being the party with an interest in bringing or defending the action is not dismissal of the action. Under Rule 17, the Court is required to give the real party in interest a reasonable amount of time to join the case after an objection is raised before dismissing the case. And under Rule 25, the transferee of an interest need not even be substituted as the named party in the lawsuit—the suit may continue by or against the original party, absent a motion. When the action is continued by or against the original party after that party transfers an interest, "the judgment will

17

be binding on the successor in interest even though the successor is not named." 7C *Wright & Miller*, § 1958. Also, it does not appear that there is any time limit on substituting parties under Rule 25(c). *See id.* ("Since Rule 25(c) is wholly permissive there is no time limit on moving to substitute under its provisions."). At least one court even postulated "as a general matter that Rule 25 can be employed after entry of judgment" in certain situations. *See Levin v. Garfinkle*, 514 F. Supp. 1160, 1163 (E.D. Pa. 1981).

The rationales for these rules are also important. Rule 25(c) is "designed to allow an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit." *ELCA*, 53 F.3d at 191 (quotation omitted). Additionally, Rule 25(c) "expressly permits parties to continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party." *Id.* The Rule is designed to allow actions to continue when the right to prosecute or defend the action switches hands. This coincides with courts' interest in seeing that disputes are decided on the merits.

Indeed, in *ELCA*, the Eighth Circuit reversed a district court's grant of a defense motion for summary judgment on similar grounds to what defendant urges here in a case which included several similar procedural facts. In *ELCA*, the plaintiff's attorneys did not know that the plaintiff had transferred its interest in the property, and the defendants discovered the property transfer through discovery.[4] *Id.* at 190. The defendant convinced the district court that summary judgment was proper on the ground that the plaintiff no longer had the right to seek damages. *See id.* The Eighth Circuit reversed, holding that the right of action passed to the transferee of the property, and the district court erred in

---

[4] Here, the plaintiffs originally believed there had been a transfer from P&L to PHG Roofing, but they based the belief upon an assignment which was ineffective. The attorneys in *ELCA* are like P&L's attorneys here in that P&L's attorneys were not aware of the post-loss effective assignment until defendant found it.

18

refusing to either substitute the transferee as the new plaintiff or allow the original plaintiff to continue. *Id.* at 191. The appellate court noted that the district court's "complete refusal" to allow either of the potential plaintiffs to prosecute the claim "essentially punished the plaintiff and rewarded the defendants for ELCA's transfer of the property" and reversed the district court. *Id.* The court also rejected the defendants' argument that "granting this substitution motion permits ELCA to mount a new case on the eve of trial." *Id.* at 191 n.5. The court instead stated:

> The nature of this action remains the same regardless of the plaintiff's name. As the new property owner, ELCA Properties seeks the same relief, and assumes an identical position to ELCA in the lawsuit. The defendants are free to assert the same defenses against ELCA Properties that it would have asserted against ELCA.

*Id.* Thus, the Eighth Circuit allowed the case to continue, either by the transferor or the transferee, when the new plaintiff's claim on the merits would be the same as the original plaintiff, and when the defendants would be able to assert the same defenses against the successor plaintiff as they would have against the original. *See id.*

The Eighth Circuit has held similarly when analyzing an assignment of a claim under Rule 17. *See Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 724 (8th Cir. 1966) ("We cannot accept Dubuque's argument that the assignment was invalid because it was made after this suit had been filed. . . . The assignment did not cause Dubuque to lose the right to assert, against [the assignee], any defenses which it could have asserted against [the assignor] and, in fact, the record discloses that Dubuque fully availed itself of this right."). The Advisory Committee Notes to Rule 17 also explain that "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed," and that the rule "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Advisory Committee Notes to Fed.

19

R. Civ. P. 17. The takeaway from Rules 17 and 25 is that, when there is a potentially viable claim, and the only mistake is the named party, courts should at least attempt to substitute the proper party before dismissing the action, so long as there is no prejudice to the opposing party and there has been no bad faith.

With that, the Court turns to how the rules apply here. Defendant's argument is that P&L may not continue prosecuting the breach of contract claim because P&L assigned the claim to PHG Roofing, and therefore P&L does not have an interest in the claim it is prosecuting. P&L executed the valid post-loss assignment on October 26, 2023, before filing this lawsuit in July 2024. Because the assignment occurred before the commencement of the lawsuit, the October 2023 assignment is governed by Rule 17. *See ELCA*, 53 F.3d at 190 n.4 ("Rule 17 applies only to transfers occurring prior to the commencement of a lawsuit[.]").

Again, the analysis here is slightly odd because of the unusual procedural pathway of this case. But ultimately Rule 17 does not present P&L with any problem. Under Rule 17, the claim must be prosecuted by the real party in interest. The real party in interest at the commencement of this lawsuit was PHG Roofing because P&L had assigned the claim to PHG Roofing. PHG Roofing was a named plaintiff at that time, though. It was only after defendant's first motion for summary judgment that the Court dismissed PHG Roofing as a plaintiff. And the Court only dismissed PHG Roofing because the parties and the Court had only partial information at the time—the valid post-loss assignment had not yet been discovered. In any case, at the outset, the real party in interest was one of the named plaintiffs, and that real party in interest continued as a plaintiff until it was dismissed, which only occurred based upon what we know now to be partial information. In retrospect, PHG Roofing should not have been dismissed at all, but at the time nobody raised the fact that there was a valid assignment. In the end, though, the conclusion is that the real party in interest prosecuted the claim at the outset

20

and continued to do so until it was dismissed based upon incomplete information. Under Rule 17, then, there was no problem regarding who was prosecuting the claim at the outset.

Further, even if there was a problem at some point regarding the real party in interest, dismissal would not be the automatic sanction. Under Rule 17, the Court must give the real party in interest a reasonable time to join the case before dismissing it, so long as the error had been made by honest mistake and the opposing party would suffer no prejudice. Take, for example, the situation before P&L and PHG Roofing cancelled the assignment, at the time defendant filed its second motion for summary judgment. Defendant's argument at the time—and defendant's ultimate argument still—was that P&L is not the real party in interest, and therefore its claim should be dismissed. (*See* Doc. 32-1). But under Rule 17, even if defendant is correct, the Court would be required to allow a reasonable time for the real party in interest—PHG Roofing at the time—to be substituted into the action. Defendant would not have suffered any prejudice by PHG Roofing's substitution because the claim and defenses would have been the exact same. In the unique context of this case, in fact, defendant would have suffered even less prejudice than normal for two reasons: first, because PHG Roofing had been party to the case for much of the case's duration, so there would not have been a stranger coming in at the last minute; and second, because PHG Roofing was only dismissed at the urging of defendant—it would be quite unfair to dismiss the party who turns out to be the real party in interest, only to later dismiss the case because the real party in interest was not party to the case. So, even at the time defendant filed its second motion for summary judgment, the Court would not have granted defendant's requested relief in full—instead,

21

Rule 17 would have required the Court to allow a reasonable time to allow PHG Roofing to be substituted as the plaintiff.[5]

But more has happened since defendant filed its second motion for summary judgment. P&L and PHG Roofing mutually agreed to cancel the assignment. The claim then legally passed back to P&L. Normally, if a claim gets transferred like this during the pendency of the lawsuit, the assignor would have been the named plaintiff at the time of the assignment. Under Rule 25, the assignor may continue prosecuting the claim or, upon motion, the assignee may be substituted for the assignor.

Here, the analysis is skewed by the wrongful-in-hindsight dismissal of PHG Roofing. Had the Court had full information when deciding the first motion for summary judgment, P&L may have been dismissed, but PHG Roofing would have continued prosecuting the claim. Then, if PHG Roofing and P&L agreed to cancel the assignment, as they ultimately did here, under Rule 25, either PHG Roofing could continue prosecuting the claim or the Court could have allowed P&L to be substituted for PHG Roofing. But the Court dismissed PHG Roofing at defendant's first motion for summary judgment even though PHG Roofing was the party with the right to bring the claim, as was unknown at the time. P&L and PHG Roofing then cancelled the assignment. Now, then, P&L is the named plaintiff, and P&L is the party who has the right to bring the claim. There is no substitution to worry about.

Again, perhaps defendant could make some complaint about the claim switching back and forth if it were prejudiced somehow by it. But defendant suffers no prejudice

---

[5] Note that, given this analysis and conclusion, defendant's motion to strike is of very little consequence. Even if the Court had decided to grant defendant's motion to strike, the result would have been that perhaps P&L could not produce admissible evidence of the cancellation of the assignment. The evidence in the record would then suggest that the assignment would still be in full force at this stage and PHG Roofing would still be the real party in interest. The Court would then allow a reasonable time for PHG Roofing to reenter the case as named plaintiff. Defendant's requested dismissal would still be denied as a practical matter.

22

here. Whether P&L or PHG Roofing's name is in the caption, and regardless of which one's corporate representative is sitting next to counsel at trial, the breach of contract claim will be the same, the evidence will be the same as far as the Court is aware, and the defenses will be the same. Further, even though it seems as though the claim has switched hands numerous times, in hindsight, the claim only switched hands twice: once before the lawsuit commenced, and once when P&L and PHG Roofing cancelled the assignment in December 2025. Also, the course of events and evidence do not show that P&L and PHG Roofing have been acting in bad faith. Additionally, consistent with the Eighth Circuit's holding in *ELCA*, there is nothing wrong with the claim switching hands at a late stage in the litigation.

The spirit underlying Rules 17 and 25 support the Court's conclusion here. Both rules are geared towards getting the proper party in the lawsuit, and making sure a mistake at the commencement or a change of interest later does not submarine a claim or defense. Here, there was no mistake at the commencement—PHG Roofing, who was the real party in interest at the time, was a named plaintiff—and there was a change of interest later, the cancellation of the assignment, handing the claim back to P&L, which should not terminate the right to bring the claim. As the *ELCA* court noted, refusing to allow either the assignee or the assignor to continue prosecuting the claim "essentially punishe[s] the plaintiff and reward[s] the defendants for [the plaintiff's] transfer of the property." *ELCA*, 53 F.3d at 191. The *ELCA* court held that such punishment is an abuse of discretion. *See id.*

There is one other factor here which would make granting defendant's motion particularly questionable. If the Court were to grant defendant's motion, the Court would be precluding any testing of the claim on the merits purely because of the order in which the parties uncovered facts. Defendant got PHG Roofing dismissed because, at the time, the parties only knew about the pre-loss assignment, which was invalid. After later

23

discovering the effective post-loss assignment, then, defendant would turn around and get P&L dismissed by arguing PHG Roofing actually had the right to the claim all along. There is nothing wrong with defendant making these arguments.  But it would be unjust to dismiss this whole case because the Court found earlier that plaintiff A lacked the right to bring the claim, only to later find that plaintiff B lacked the right to bring the claim because plaintiff A in fact had the right to bring the claim the whole time.

Several of defendant's other arguments remain.  Defendant argues judicial estoppel bars P&L from changing theories and arguments this late when P&L had made a different argument earlier.  (Doc. 38, at 6–7).  "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998).  The doctrine "is limited to those instances in which a party takes a position that is clearly inconsistent with its earlier position." *Id.* at 1143.  P&L argues its later position is not inconsistent with its earlier argument, but instead is a new argument based upon new facts.  The Court agrees with P&L.  There is no contradiction in its position.  P&L asserted for a long time, and its representative testified, that P&L had assigned the claim to PHG Roofing.  P&L now asserts that it later agreed with PHG Roofing to cancel the assignment.  This is not "clearly inconsistent with its earlier position." *Id.*  Indeed, P&L could not have taken a position on the cancellation earlier—it had not occurred yet.  The Court understands defendant's argument that judicial estoppel still applies here because P&L caused the new facts to occur, which should not be allowed.  But, as the Court explained above, there is no procedural rule precluding the assignment of a claim late in litigation.  And nobody has pointed to a substantive rule precluding the same.  So, although defendant may have a point that creating new facts after the close of discovery may play a role in the judicial estoppel analysis in some situations, this is not one of those situations.

24

Finally, one factor courts consider in the judicial estoppel analysis is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). As discussed above, whether the Court accepts P&L's argument is of little consequence. If the Court sided with defendant's arguments generally, the outcome would be to allow PHG Roofing a reasonable time to reenter the case, and not to dismiss the claim altogether. There is a claim here. The only question is who has the right to bring it. P&L gains no unfair advantage by making an argument that it is the party with the right to bring the claim, and there is no unfair detriment to defendant if P&L is allowed to make the argument. Thus, the Court rejects defendant's judicial estoppel argument.

The Court stated above that it would discuss the "sham affidavit" issue below. The Court returns to that issue now. Defendant's argument that P&L's affidavits are "sham affidavits" fails for similar reasons the judicial estoppel argument fails. "An affidavit is a sham affidavit and should be disregarded if it contradicts prior testimony or is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before." *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021) (cleaned up). As explained above, the new affidavits do not contradict prior testimony. Instead, there are new facts. The witnesses are not putting a new spin on old evidence, but instead the affidavits discuss the new evidence. And as also discussed above, parties can assign or transfer claims late in litigation. As defendant argues, P&L indeed created the facts. But, in the procedural context of transferring claims, there is no problem with it. Also, again, even if the Court threw out the affidavits as sham affidavits, which it is not doing, the result would not be defendant's requested dismissal of the case. The Court would instead give PHG Roofing the right to join or be substituted as the plaintiff. The sham

25

affidavit rule is not applicable here. Thus, the Court rejects defendant's argument that the Court should disregard P&L's affidavits because they are sham affidavits.

Defendant argues P&L is attempting to change theories without amending its complaint, which is improper. (Doc. 38, at 7–9). In the operative pleading, the original state court petition, P&L alleges "P&L assigned its rights to any benefits made under this claim to Plaintiff PHG." (Doc. 2, at 2). P&L now argues that it agreed with PHG Roofing to cancel the assignment. Defendant paints this as "a post-hoc belated attempt to change the underlying facts and very nature of this dispute." (Doc. 38, at 8). Defendant quotes several Eighth Circuit cases for the proposition that parties may not manufacture un-pled claims later in litigation—like at summary judgment—and that new theories of liability asserted at summary judgment are litigation tactics viewed unfavorably by courts. (*Id.*). But as P&L argues, its "claims for relief remain the same as they were upon the initial filing of this lawsuit." (Doc. 40, at 3). There are no new claims here, and there is no new theory of liability being asserted by P&L. This remains what appears to be a straight-forward breach of contract/insurance policy claim. An assignment, or a cancellation of an assignment, does not represent a new theory or a new claim, but instead a new party bringing the same claim, at least in this context. Thus, the Court rejects defendant's argument regarding P&L's failure to amend the complaint.

Defendant also argues P&L should be barred from using the termination letter and PHG Roofing's acknowledgment because P&L did not disclose them in discovery. (Doc. 38, at 9–10). Of course, the cancellation itself occurred after the close of discovery. So, one could take the position that, in fact, P&L disclosed the documents in a timely manner, relatively quickly after the documents were executed. The late creation of the documents also means the disclosure after discovery closed was substantially justified—one cannot disclose documents which do not exist. Defendant notes that the disclosure rules prevent trial by ambush and ensure fairness in litigation. (*Id.*, at 10). Again, however, when

26

defendant shows up at trial, the claims, evidence, and defenses will be the same as they have been throughout the litigation—or, at least, no party has notified the Court otherwise. And defendant will be opposite a party who has been a plaintiff in this case from the outset. Defendant has suffered no prejudice here. The Court rejects defendant's discovery-based argument.

Thus, defendant's motion for summary judgment on P&L's breach of contract claim is **denied**. (Doc. 32).

### V. CONCLUSION

For the reasons stated above, the Court **denies** defendant's motion to strike. (Doc. 41). The Court also **denies** defendant's motion for summary judgment. (Doc. 32).

**IT IS SO ORDERED** this 8th day of April, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

27